1
2
3
4
5
6
7       IN THE UNITED STATES DISTRICT COURT
8       FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10  ALEXANDER PRESNIAKOV,                          No. C 04-0831 MJJ
11              Plaintiff,
12      v.                                          **ORDER DENYING DEFENDANTS'
                                                    MOTION TO DISMISS AND GRANTING
13  RETAIL DISTRIBUTORS, LLC, ET AL.,               DEFENDANTS' MOTION TO COMPEL
                                                    ARBITRATION AND MOTION TO STAY**
14              Defendants.
15  _____/
16                            **INTRODUCTION**
17          For the second time, Defendants Retail Distributors, LLC ("RDI") and Raymond Wysocki
18  ("Wysocki") move to dismiss Plaintiff Alexander Presniakov's Complaint alleging misappropriation
19  of trade secrets, breach of license agreement, breach of covenant of good faith and fair dealing,
20  intentional interference with economic advantage, negligent interference with economic advantage,
21  unfair competition, and breach of confidence.  Defendants argue that the Court lacks subject matter
22  jurisdiction and the Complaint fails to state a claim upon which relief can be granted based upon the
23  execution of an Exclusive License Agreement ("License Agreement") that includes an arbitration
24  provision.  Alternatively, Defendants argue that the Court is limited to ruling on the issue of
25  arbitrability, should compel arbitration, and stay the action.  For the reasons stated below,
26  Defendants' Motion to Dismiss is **DENIED** and Motion to Compel and Motion to Stay is
27  **GRANTED**.
28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

**FACTUAL BACKGROUND**

In June 1999, Plaintiff contacted Defendant Kim Banchs ("Banchs") about developing, patenting, and marketing his Easy Mop invention.  Plaintiff alleges that Banchs was a representative of Defendant Tara Productions, Inc. ("Tara").  On October 4, 2000, Plaintiff, Wysocki on behalf of RDI, and Banchs entered into the License Agreement in which RDI, as licensee, agreed to market the Easy Mop for Plaintiff and Banchs, as joint licensors.  Plaintiff alleges that RDI agreed to protect the confidentiality of Plaintiff's invention under this agreement.

Plaintiff alleges that he was "in a dire financial state" and that his mother was suffering from cancer at the time that he signed the License Agreement.  (Pl.'s Opp'n to Mot. to Compel Arbitration and Dismiss Compl. ("Opp'n") at 4).  He also alleges that Defendants were aware of these circumstances.  Plaintiff also stated that Banchs and Beth Geller, an RDI representative, told him that no changes would be made to the License Agreement.

The License Agreement included an arbitration provision.  Under the title "Arbitration," section 11.2 of the License Agreement contains the following language:

> **Section 11.2 Arbitration.**  Except in the event of (I) the need for immediate equitable relief from a court of competent jurisdiction to prevent irreparable harm pending arbitral relief, (ii) any litigation or proceeding commenced by any third party against either party hereto, or any claims between the parties hereto arising out of such litigation or proceeding, in which the third party is an indispensable party or potential third party defendant, and except for (iii) enforcement of a party's remedies to the extent such enforcement must be pursuant to court authorization or order under applicable state law or any other jurisdiction having jurisdiction, any dispute or controversy between the parties involving the construction or application of any terms, covenants, or conditions of this Agreement, or transactions under it, or any claim arising out of or relating to this Agreement or transactions under it, shall, on the request of one party served on the other, be submitted to arbitration under this Section 11.2.  Any such dispute, controversy, or claim shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect, except as otherwise specifically stated in this Agreement, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

The License Agreement also included a clause on the controlling state law.  Under the title "Governing Law," section 11.7 of the License Agreement contains the following language:

> **Section 11.7 Governing Law.**  This Agreement shall be governed by and construed in accordance with the contract law of the State of Florida applicable to contracts made and to be performed wholly in that State.

2

**United States District Court**
For the Northern District of California

1    Beginning in or about March 2002, various consumer products companies began

2    marketing a dispensing sponge mop resembling Plaintiff's product.  Subsequently, Plaintiff

3    contacted Wysocki to inquire about the reasons behind this latest development.  Wysocki

4    responded by saying, "so they did go with it."  Plaintiff believes that Defendants contributed,

5    ratified, or authorized the proliferation of ideas related to his invention.  On February 27,

6    2004, Plaintiff filed the present action.  Defendants filed their original motion to dismiss on

7    December 9, 2004, and the Court denied their motion after oral argument on February 15,

8    2005.

9                              **STANDARD OF REVIEW**

10    The Federal Arbitration Act ("FAA") (9 U.S.C. § 1 *et. seq.* (2004)) governs arbitration

11    agreements in contracts involving transactions in interstate commerce.  *Moses H. Cone Mem'l Hosp.*

12    *v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).  Congress intended courts to construe

13    commerce as broadly as possible.  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th 1999).

14    Written provisions to resolve controversies arising out of such contracts through arbitration "shall be

15    valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the

16    revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has stated that, "any doubts

17    concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Simula, Inc.*,

18    175 F.3d at 719 (quoting *Moses*, 460 U.S. at 24-25).  District courts have limited discretion on

19    arbitration issues.  *Id.*  They can only determine "whether a written arbitration agreement exists, and

20    if it does, enforce it in accordance with its terms."  *Id.*  This is consistent with federal policy that

21    favors arbitration.  *Volt Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S.

22    468, 475 (1989).

23    Arbitrability is "[the] question whether the parties have submitted a particular dispute to

24    arbitration."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  It is "an issue for

25    judicial determination [u]nless the parties clearly and unmistakably provide

26    otherwise." *Id.* (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649

27    (1986)).

28    In determining whether to issue an order compelling arbitration, the court may not review the

3

1   merits of the dispute, but must limit its inquiry to (1) whether the contract containing the arbitration

2   agreement evidences a transaction involving interstate commerce, (2) whether there exists a valid

3   agreement to arbitrate, and (3) whether the dispute(s) fall within the scope of the agreement to

4   arbitrate.  *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991).

**ANALYSIS**

6   **A.     Arbitrability**

7        1.     Dispute Within Scope of the Agreement to Arbitrate

8        The present case is a "dispute or controversy . . . or any claim arising out of or

9   relating to this Agreement" between the signatories[1] of the License Agreement, Plaintiff and

10   Defendants.  Courts have construed arbitration clauses with similar language liberally.

11   *Simula, Inc.*, 175 F.3d at 720.  The standard for interpreting such provisions is that Plaintiff's

12   claims "need only 'touch matters' covered by the contract containing the arbitration clause

13   and all doubts are to be resolved in favor of arbitrability."  *Id.* (quoting *Mitsubishi Motors*,

14   473 U.S. 614, 624 n.13 (1985)).

15        Pursuant to the License Agreement, Defendants contend that Plaintiff is subject to the

16   arbitration provision, and that Plaintiff's claims do not fall into any of the applicable

17   exceptions to arbitration.  Here, the License Agreement had the following three exceptions to

18   submitting a dispute to arbitration: (1) "the need for immediate equitable relief . . . to prevent

19   irreparable harm," (2) a third party is involved in a dispute against Plaintiff or Defendants,

20   and (3) the need to enforce remedies judicially against Plaintiff or Defendants.  Defendants

21   correctly assert that Plaintiff's claims do not fall into the first exception to arbitration

22   because Plaintiff did not allege the need for immediate equitable relief from a court.

23   Dispensing sponge mops similar to Plaintiff's product have been marketed for almost three

24   years, and Plaintiff is not seeking an injunction or other time-sensitive relief.  Furthermore,

25   no third party is involved in this dispute, and Plaintiff is not seeking enforcement of

26   remedies.  Consequently, Plaintiff's claims do not fall within the purview of the exceptions

27

28        [1] Plaintiff does not dispute the validity of his signature in the License Agreement or the
     contention that he agreed to submit to arbitration by signing the License Agreement.

4

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    to the arbitration provision in the License Agreement.  In sum, Plaintiff's allegations fall

2    within the broad scope of the arbitration provision of the License Agreement.

3         2.    Unconscionability

4         Plaintiff argues that the arbitration provision was unconscionable under Florida state

5    law.[2]  Under Florida law, courts must find that the contract is both procedurally and

6    substantively unconscionable.  *Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990,

7    992 (Fla. Dist. Ct. App. 2004).  Some courts also employ a balancing approach – "if the

8    contract is substantively unconscionable to a great degree, and some quantum of procedural

9    unconscionability exists, the contract is unenforceable."  *Orkin Exterminating Co. v. Petsch*,

10   872 So. 2d 259, 265 (Fla. Dist. Ct. App. 2004).  Procedural unconscionability involves "the

11   relative bargaining power of the parties and their ability to know and understand the disputed

12   contract terms."  *Palm Beach*, 885 So. 2d at 992.  Substantive unconscionability relates to

13   whether the terms of the agreement are "unreasonable and unfair."  *Id.*  In order to be

14   deemed substantively unconscionable, the terms of the arbitration clause must be so

15   "outrageously unfair" as to "shock the judicial conscience."  *Gainesville Health Care Ctr.,*

16   *Inc. v. Weston*, 857 So. 2d 278, 284-85 (Fla. Dist. Ct. App. 2003).  The party seeking to

17   avoid enforcement of the arbitration clause based on a claim of unconscionability has the

18   burden of presenting "sufficient evidence" to find that the provision is unenforceable.  *Sims*

19   *v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1321 (S.D. Fla. 2004).

20        a.    *Procedural Unconscionability*

21        In determining whether an arbitration provision is procedurally unconscionable,

22   courts tend to focus on the individualized circumstances under which the contract was

23   entered.  *Romano ex rel. Romano v. Manor Care, Inc.*, 861 So. 2d 59, 62 (Fla. Dist. Ct. App.

24   2003).  Florida courts consider whether the provision was located in an "inconspicuous" part

25   of the agreement or written in fine print.  *Brasington v. EMC Corp.*, 885 So. 2d 1212, 1218

26

27        [2] Here, Plaintiff asserts that section 11.7 of the License Agreement entitled,  "Governing Law,"
     demonstrates that Florida law controls the instant dispute.  Plaintiff and Defendant agree that the
28   execution of the License Agreement constitutes a binding contract between Plaintiff, RDI, and Banchs.
     Thus, Florida state law governs the analysis of whether the arbitration provision was unconscionable.

(Fla. Dist. Ct. App. 2003).  Another factor courts consider involves whether the party opposing arbitration had a "realistic opportunity to bargain" or was subjected to a "take-it-or-leave-it" scenario.  *Gainesville*, 857 So. 2d at 284.  An agreement made under such conditions constitutes an adhesion contract and is a "strong indicator" that the contract is procedurally unconscionable.  *Id.* at  285.  Other factors to consider include the following: "age, education, intelligence, business acumen and experience, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the goods in question."  *Bellsouth Mobility LLC v. Christopher*, 819 So. 2d 171, 173 (Fla. Dist. Ct. App. 2002) (*quoting Kohl v. Bay Colony Club Condo., Inc.*, 398 So. 2d 865, 868 (Fla. Dist. Ct. App. 1981)).

Here, Plaintiff asserts that the arbitration provision was procedurally unconscionable. Plaintiff contends that the arbitration provision was given on a "take-it-or-leave-it" basis and that he did not understand many of the provision's terms.[3]  Plaintiff further asserts that he did not have the money to afford an attorney at the time the arbitration was entered into, and therefore he felt that "he had no choice but to sign."  Defendants respond that Plaintiff had a reasonable opportunity to understand the terms of the contract and to negotiate the terms (e.g. RDI's payment for Plaintiff's patent attorney, Plaintiff's choice of patent attorney, and payment for Plaintiff's future bills).

The Court finds Plaintiff's arguments unpersuasive for several reasons.  Initially, Plaintiff does not contend that he was not given adequate time to review the License Agreement before signing it.  Although Plaintiff could not afford an attorney, he could have taken additional time to study the License Agreement or discuss it with trusted friends or advisors.  Furthermore, in the License Agreement, the arbitration provision is not inconspicuous nor in fine print.  It is clearly entitled, "Arbitration," is in bold letters, and is on the seventh page of an eight-page document.  *Id.*

---

[3] Presumably, Plaintiff's statement, "The arbitration provision is procedurally unconscionable because . . . [it] contained many terms which Presniakov did know [sic] and understand, including the arbitration provision," was a typo.  (Opp'n at 4).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Moreover, Plaintiff's assertion that he is "a relatively unsophisticated and poor

2    inventor" is without support in the record.  (Opp'n at 5).  In fact, Plaintiff's ability to initiate

3    contact with Tara through the Inventor's Digest and his attempt to negotiate a 1% royalty

4    rate and advance indicates that Plaintiff is a fairly savvy businessperson.

5        Thus, considering all of the circumstances under which the License Agreement was

6    entered, the Court finds that Plaintiff failed to meet his burden of establishing that the

7    arbitration provision was procedurally unconscionable.

8        *b.        Substantive Unconscionability*

9        To determine whether an arbitration provision is substantively unconscionable, courts

10   consider whether one party is bound to arbitration of its claims while the other is not.  *See*

11   *Palm Beach*, 885 So. 2d at 992.  Courts also consider whether the arbitration provision limits

12   the relief available.  *Stewart Agency, Inc. v. Robinson*, 855 So. 2d 726, 728 (Fla. Dist. Ct.

13   App. 2003).  Additionally, courts may consider whether the expense of arbitration is greater

14   than the expense of litigating the dispute or would prevent the party opposing arbitration

15   from vindicating his statutory rights.  *Id.* at 728-29.

16       In the present case, Plaintiff contends that the arbitration provision is substantively

17   unconscionable because arbitrating would be prohibitively more expensive than litigating in

18   federal court.  Specifically, Plaintiff states that he "currently has no income and has been

19   unable to sell his assets, which are his paintings."  (Opp'n at 4).  Plaintiff asserts that

20   arbitrating the current dispute would cost him over $14,000 in fees for the initial filing fee

21   and case service fee plus fees for each of the three arbitrators.  Defendants respond that

22   Plaintiff's estimates of the arbitration fees are purely "speculative."

23       The Court finds that under the title, "R-49. Administrative Fees," the Commercial

24   Arbitration Rules ("Rules") of the American Arbitration Association ("AAA") state, "[t]he

25   AAA may, in the event of extreme hardship on the part of any party, defer or reduce the

26   administrative fees."  Rules and Procedures, *Commercial Arbitration Rules*, American

27   Arbitration Association (last visited Mar. 8, 2005)*, at* http://www.adr.org/sp.asp?id=22440.

28   According to the Rules, Plaintiff would have the opportunity to demonstrate his deleterious

financial condition in order to defer or reduce administrative fees associated with arbitration. Therefore, as in *Stewart*, there is nothing to show that the expense of arbitration is greater than the expense of litigating the issues. Plaintiff offers no other reasons to support a finding of substantive unconscionability based on the actual terms of the arbitration provision. Thus, Plaintiff has failed to meet his burden of establishing that the arbitration provision is substantively unconscionable.

3.    Tara Productions

The parties do not dispute that Tara was not a signatory to the License Agreement. However, Defendants argue that since Plaintiffs claims against Tara stem from the same controversy as Plaintiffs claims against Defendants, the Court should construe the License Agreement to include Tara. Plaintiff responds that its claims against Tara are not dependent on the License Agreement, and therefore those claims should be allowed to proceed. Tara concurs with Plaintiff that the claims against it should not be compelled to arbitration. Rather, Tara contends that the suit against it should be stayed pending arbitration.

Even though the Licence Agreement contained a general choice of law provision, this Court has held that the FAA and federal decisional law define the rights of a non-signatory to an arbitration provision. *Fujian Pacific Elec. Co. v. Bechtel Power Corp.*, 2004 WL 2645974, *3 (N.D. Cal. Nov. 19, 2004). Where the litigation involves non-arbitrating parties, the court has discretion whether to stay the litigation as to them. *See Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000). Where a co-defendant is subject to the arbitration agreement, and the non-signatory's potential liability is based on the co-defendant's conduct, and such liability could have a critical impact on the co-defendant's right to arbitrate, a stay of the ligation as to the non-signatory is the preferred course of action. *See id.* at 795-76. Such is the case here. Plaintiff's contract claims all derive from "same operative facts," namely that Defendants, including Tara, improperly obtained and disclosed Plaintiff's invention. *Id.* at 795. Under such circumstances, a stay of the proceedings against Tara promotes judicial economy and prevents duplicative litigation. Thus, the Court **STAYS** the action as to Tara.

8

**United States District Court**
For the Northern District of California

1    **B.**      **Motion to Dismiss**

2          Defendants are moving to dismiss the instant dispute for a second time.  Plaintiff

3    argues that the Court is precluded from granting the dismissal under the "law of the case

4    doctrine."  This doctrine "posits that when a court decides upon a rule of law, that decision

5    should continue to govern the same issues in subsequent stages in the same case."

6    *Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).  Furthermore, the

7    doctrine "expresses only the practice of courts generally to refuse to reopen questions

8    formally decided, and is not a limitation on their power."  *U.S. v. Maybusher*, 735 F.2d 366,

9    370 (9th Cir. 1984).  Depending on the nature of the case or issue and on the level or levels

10   of the court or courts involved, a court may have discretion to depart from the law of the case

11   where: 1) the first decision was clearly erroneous, 2) an intervening change in the law has

12   occurred, 3) the evidence on remand is substantially different, 4) other changed

13   circumstances exist, or 5) a manifest injustice would otherwise result.  *See U.S. v. Alexander*,

14   106 F.3d 874, 876-78 (9th Cir. 1997).

15          Here, Defendants offer no reason why the Court should reconsider its denial of

16   Defendants' original motion to dismiss on February 15, 2005.  There have been no

17   substantial changes since the Court denied the motion, and no injustice would result from the

18   Court denying the instant Motion to Dismiss.  Defendants merely resubmitted their original

19   motion to dismiss and added the following statement, "[a]lternatively, the Defendants request

20   that the Court compel arbitration and stay the matter in accordance with 9 U.S.C. §4."  (Mot.

21   at 2).  Thus, pursuant to the law of the case doctrine, the Court **DENIES** the Motion to

22   Dismiss.

23   **C.**      **Motion to Compel and Motion to Stay**

24          In the alternative, Defendants move to compel arbitration and to stay the action

25   pending the outcome of arbitration.  The License Agreement containing the arbitration

26   provision evidenced a transaction involving interstate commerce, there was a valid

27   agreement to arbitrate, and the dispute fell within the scope of the agreement to arbitrate.

28   Further, the evidence does not support Plaintiff's contention that the arbitration provision

9

1  was unconscionable.  Thus, pursuant to 9 U.S.C. § 4, the Court **GRANTS** Defendants'

2  Motion to Compel and Motion to Stay.

3                                    **CONCLUSION**

4        For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss and

5  **GRANTS** Defendants' Motion to Compel Arbitration and Motion to Stay.



8  **IT IS SO ORDERED.**

Dated: March__29___, 2005

10                                        _/s/_____

                                          MARTIN J. JENKINS
                                          UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California